**Hearing Date and Time: November 9, 2005, at 10:00 a.m. (New York Time)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                        :
                                                             :   Chapter 11 Case No.
**TL ADMINISTRATION CORPORATION,**                           :
**et al. (f/k/a TWINLAB CORPORATION, et al.),**              :   03-15564 (RDD)
                                                             :
                                                             :   (Jointly Administered)
                    Debtors.                                 :
------------------------------------------------------------x
                                                             :
**TL ADMINISTRATION CORPORATION,**                           :
**et al. (f/k/a TWINLAB CORPORATION, et al.),**              :
                                                             :   Adversary Proceeding No.
                    Plaintiffs,                              :
                                                             :   05-02376 (RDD)
         v.                                                  :
                                                             :
**IDEASPHERE, INC.,**                                        :
**AND TL ACQUISITION CORP.**                                 :
                                                             :
                    Defendants.                              :
------------------------------------------------------------x

# DEBTORS' REPLY TO IDEASPHERE'S OPPOSITION
# TO DEBTORS' MOTION FOR SUMMARY JUDGMENT

WEIL, GOTSHAL & MANGES LLP
Attorneys for the Debtors
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Michael P. Kessler, Esq. (MK 7134)
Gary D. Ticoll, Esq. (GT 1001)
Garrett A. Fail, Esq. (GF 4322)

TL Administration Corporation (f/k/a Twinlab Corporation), TL Administration Inc. (f/k/a Twin Laboratories, Inc.), and TL Administration (UK) Ltd. (f/k/a Twin Laboratories (UK) Ltd.) (collectively, the "Debtors") submit this reply to the response (the "Defendants' Response") filed by Ideasphere, Inc. and TL Acquisition Corp. (collectively, the "Defendants") in opposition to the Debtors' motion for summary judgment (the "Debtors' Motion for Summary Judgment") in respect of the complaint (the "Complaint"), dated August 10, 2005, filed by the Debtors and the counterclaim (the "Counterclaim"), dated September 12, 2005, filed by the Defendants in this adversary proceeding.

## PRELIMINARY STATEMENT[1]

Nearly two years after the sale was consummated, and months after the Debtors' Plan released Defendants from and enjoined claims against them "relating to" the Excluded Assets, Defendants see an opportunity to acquire rights, claims or causes of actions related to Excluded Assets without the risk of exposure for liability. Defendants' argument is nothing more than a thinly veiled attempt to re-trade a deal with the benefit of hindsight.

## REPLY

In the sale to Defendants, the Debtors sold not all, but substantially all of their assets. The Purchase Agreement is clear and unambiguous: the Debtors retained, among other things, "all insurance policies or rights to proceeds thereof"[2] and "any rights, claims or causes of

---

[1] Capitalized terms used herein and not otherwise defined herein have the respective meanings ascribed to them in the Debtors' Motion for Summary Judgment and the Debtors' Response to Memorandum of Law in Support of Defendants' Motion for Summary Judgment (the "Debtors' Response").

[2] Certain "Excluded Assets" were excluded from the sale of substantially all of the Debtors' assets to Defendants. See Purchase Agreement § 2.1 ("'Purchased Assets' shall mean all the assets, properties, rights and claims of every kind and description of each of the Sellers used in the Business (other than Excluded Assets)…"); see also id. § 2.2 ("Nothing herein contained shall be deemed to sell, transfer, assign or convey the Excluded Assets to any Purchaser, and

action of [the Debtors] against third parties [that are] related to the [insurance policies or rights to proceeds thereof]."[3]

The Debtors and Defendants agree that the outcome of this adversary proceeding turns on whether or not the Recovery Lawsuits are "related to" the Prepetition Policies. See Defs.' Response at 2. The language of the Purchase Agreement is clear and unambiguous that the Recovery Lawsuits and the Settlement Proceeds relate to the Prepetition Policies: absent the Prepetition Policies, there would be no Settlement Proceeds.

### 1. **"Insurance Policies" Means "Insurance Policies"**

Until the filing of the Defendants' Response, the pleadings filed by the Defendants in connection with this adversary proceeding were based on the premise that the Settlement Proceeds and the Recovery Lawsuits were not related to the Prepetition Policies. However, because the relationship is so close, the Defendants' arguments could only be sustained if the meaning of the phrase "related to" were so narrowly interpreted as to deprive it, and the provisions of the Purchase Agreement containing it, of any meaning whatsoever. Unfortunately for the Defendants, the case law is clear that the meaning of "related to" is to be broadly interpreted. To address their conundrum, the Defendants are now arguing that the term "insurance policies" should be deprived of its plain and common sense meaning, and be interpreted to be nothing but "pieces of paper." Defs.' Response at 3. In this way, the Defendants painstakingly and incredibly argue that they have uncovered a meaning for "related to" that will distance the Settlement Proceeds and Recovery Lawsuits from the Prepetition

---

Sellers shall retain all right, title and interest to, in and under the Excluded Assets."). The enumerated list of "Excluded Assets" includes "all insurance policies or rights to proceeds thereof…" Id. § 2.2(i).

[3] Purchased Assets include "any rights, claims or causes of action of [the Debtors] against third parties, … but exclud[e] those related to the Excluded Assets." Id. § 2.1(p) (emphasis added).

Policies.  According to the Defendants, insurance policies are simply "pieces of paper" and the only thing related to insurance policies are the rights granted to the insured thereunder.  This bizarre formulation underpins the entire argument of the Defendants.

The language of the Purchase Agreement is clear and unambiguous.  "[A]ll insurance policies or rights to proceeds thereof" are expressly retained by the Debtors.  There is no reference in the Purchase Agreement to Defendants' invention of  "the rights granted … under each policy … and … the proceeds potentially available by exercise of [those] rights."  Accordingly, Defendants' arguments supported by Defendants' newly-created and self-serving definition of "insurance policies" must fail.

Moreover, pursuant to the terms of the Purchase Agreement, the Recovery Lawsuits and Settlement Proceeds are retained by the Debtors simply because they are related to the Prepetition Policies.  There is no requirement in the Purchase Agreement that the Recovery Lawsuits "arise out of," "affect in any manner rights afforded … under," or affect "the total amount of insurance proceeds … available" under the Prepetition Policies.  See id. at 3-4, 7.  Defendants' arguments are red herrings.

2. **The Recovery Lawsuits and Settlement Proceeds Are Not Purchased Assets**

Relying on their limited definition of "insurance policies" as "the rights granted to the insured under each policy," Defendants argue that "Debtors do not now seek to retain ownership of claims related to Excluded Assets but rather to take back ownership of claims … related to an included asset."  Defs.' Response at 4.  Defendants assert "the Recovery Lawsuits and the Settlement Proceeds are actually included assets that were sold to the Defendants."  Defs.' Response at 4.  To support their conclusion, Defendants cite "§§ 2.1 (providing for the sale of all non-excluded assets generally), 2.1(a) (setting forth accounts receivable as part of the

non-exhaustive list of assets purchased) & 2.1(p) (setting forth claims against third parties as part of the non-exhaustive list of assets purchased.)."

There are several flaws in Defendants' argument. First, neither the Recovery Lawsuits nor the Settlement Proceeds are accounts receivables. Neither was listed on the Debtors' books and records and neither was scheduled by the Debtors on their schedules of assets and liabilities.[4] Second, Defendants' argument relies on Defendants' definition of "insurance policies." Defs.' Response at 4. ("[T]he claims at issue have absolutely no affect [sic.] on the Debtors' rights under the excluded insurance policies or to the proceeds thereof."). As noted in the Debtors' Response, the subsections in Section 2.1 contain carve-outs that Defendants omit: Section 2.1(p) explicitly excludes "any rights, claims or causes of action … related to the Excluded Assets." See Purchase Agreement § 2.1(p); see also Debtors' Response at 6-7. As explained above, the Recovery Lawsuits need not relate to the rights granted under the Prepetition Policies or the proceeds available by exercise of those rights; they need only relate to the Prepetition Policies themselves, which they do.

### 3. **The Debtors' Position Is Consistent With Case Law**

Defendants admit that the plain meaning of "related to" is "broad" and that "this meaning, in the context of claims, is not limited to claims 'arising out of' a particular item, act, or occurrence." Defs.'s Response at 5. "Defendants do dispute, however that [Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128-29 (2d Cir. 2001)] stands for the principle that any level of connection creates 'relatedness' without an analysis of the actual connection or the meaning and purpose of the terms in the contract at issue." Id. This dispute, however, is of

---

[4] Nonetheless, even if the Recovery Lawsuits and Settlement Proceeds are accounts receivable, they would still be Excluded Assets. See Purchase Agreement § 2.1(a) ("all accounts receivable other than any accounts receivable … arising out of or in connection with any Excluded Asset").

Defendants' own making, a straw man constructed by Defendants and supported by their debunked definition of "insurance policies." The Debtors did not contend, as Defendants ask the Court to assume, that "any level of connection creates 'relatedness' without an analysis." <u>Id.</u> at 5, 7; <u>see</u> Debtors' Motion to Dismiss; <u>see also</u> Debtors' Response.

An analysis of the undisputed facts in this case demonstrate the close connection between the Recovery Lawsuits, Settlement Proceeds, and the Prepetition Policies. The Settlement Proceeds are derived from commissions paid by insurers with respect to the placement of coverage on behalf of insured companies like the Debtors, and would not have been paid without the placement of such Prepetition Policies. <u>See</u> Debtors' Response Exhibit A. The Recovery Lawsuits and the Settlement Proceeds relate to the Prepetition Policies, and such relationship is in no way "tangential," "colloquial," or "immaterial." <u>See</u> Defs.' Response at 6. It defies common sense to suggest they are not related. Indeed, absent the Prepetition Policies, there would be no Settlement Proceeds. The Court can find "little doubt that [the Recovery Lawsuits and Settlement Proceeds] … bears some connection to" the Prepetition Policies." <u>See</u> <u>Vermont Pure Holdings, Ltd. v. Descartes Sys. Group, Inc.</u>, 140 F. Supp. 2d. 331, 334 (D. Vt. 2001); <u>see also</u> Defs.' Response at 7. Defendants' argument that no facts support a substantive relationship between the Recovery Lawsuits and the Prepetition Policies relies on Defendants' limited definition of "insurance policies." <u>See</u> Defs.' Response at 9, 10-11. Defendants argue irrelevantly that the Recovery Lawsuits do not relate to the "the rights granted … under each [insurance] policy … and … the proceeds potentially available by exercise of [those] rights." The determinative issue in this case is whether or not the Recovery Lawsuits relate to "insurance policies," not certain "rights granted" thereunder.

Defendants' citation to and discussion of <u>Camferdam v. Ernst & Young Int'l Inc.</u>, 2004 WL 1124649 (S.D.N.Y. May 19, 2004) does not conflict with the Debtors' position.  <u>See</u> Defs.' Response at 9-10.  As Defendants quoted, in that case, the court found that "[r]ather than embodying an agreement to arbitrate any claim arising out of the parties' agreement, the clause [requiring arbitration of "[a]ny controversy or claim arising out of or relating to tax and tax related services"] limits arbitration to disputes relating to the tax services Defendants were to provide Plaintiffs."  <u>See</u> <u>id.</u> at 10 (citing <u>Camferdam</u>, 2004 WL 1124649 at *2).  As Defendants observed, the court determined that if "the parties had intended to submit [disputes related to terms of the agreement itself, rather than disputes related to the services provided thereunder] to an arbitrator, they should have included a broader arbitration clause."  <u>Id.</u>  In the instant case, the language of the Purchase Agreement did not limit the exclusion of rights, claims, or causes of actions to those related to the proceeds of the Debtors' insurance policies or those related to the rights granted under the insurance policies.  In the instant case, the parties incorporated a broader exclusionary clause into the Purchase Agreement.[5]  <u>See</u> Purchase Agreement § 2.1(p).

Defendants' citation to <u>Empire Healthchoice Assurance Inc. v. McVeigh</u>, 396 F.3d 136 (2d. Cir. 2005), is inapposite.  <u>See</u> Defs.' Response at 12.  The court in <u>Empire</u> faced questions of statutory interpretation and presumptions.  The question before the Court in the

---

[5] Defendants imply that for the Recovery Lawsuits to be related to an Excluded Asset, the parties would have had to "make insurance brokerage services an Excluded Asset."  Defs.'s Response at 10. Defendants describe the claims underlying the Recovery Lawsuits as "claims relating to assets the parties did not choose themselves to exclude – in this case, brokerage services."  <u>Id.</u> at 11. Defendants ignore the basic concept that one thing may be related to (indeed, closely related to) more than one other thing.  While the Recovery Lawsuits may be related to brokerage services, they are also related to the Prepetition Policies, which are Excluded Assets.  Brokerage services need not be listed as an Excluded Asset for the Recovery Lawsuits to be "related to" an Excluded Asset.  <u>See</u> Debtors' Response at 3-4.

NY2:\1582269\04\XWVX04!.DOC\78300.0003                        6

instant case is one of contractual interpretation, and there is no presumption in favor of Defendants.[6]

### 4. **Defendants' Interpretation Strips Contract Terms of Any Meaning**

Defendants' final argument is that the exclusions explicitly incorporated in Section 2.1 of the Purchase Agreement, entitled, "Purchase and Sale of Assets," cannot supplement the exclusions listed in Section 2.2 of the Purchase Agreement, entitled, "Excluded Assets." Defs.' Response at 14-16. Defendants contend that "the Purchase Agreement provided for a limited set of Excluded Assets," and that the use of the word "including" to introduce an "unexhaustive list of inclusions" cannot limit the assets included in the sale. Defs.' Response at 14-15.

As an initial matter, the fact that the word "including" does not "limit any general statement that it follows to the specific or similar items or matters immediately following it" does not preclude the specific items or matters immediately following the word "including" from otherwise limiting the general provision preceding it. More critically, Defendants' theory would violate "a fundamental rule of contract interpretation: i.e., when interpreting a contract, the entire contract must be considered so as to give each part meaning." Brooke Group v. JCH Syndicate, 663 N.E.2d 635, 637 (N.Y. 1996) (citing Weiss v. Weiss, 418 N.E.2d 377, 379 (N.Y. 1981); Laba v. Carey, 29 N.Y.2d 302, 308 (1971)[7]; Cruden v Bank of N. Y., 957 F2d 961, 976 (2d Cir.

---

[6] Defendants have repeated their claim that the Purchase Agreement contains a presumption "expressly set forth in Section 2.1, that all assets, unless explicitly excluded, are Purchased Assets." See Defs.' Response at 13; Defs.' Mot. Summ. J. at 14. No presumption is explicit in Section 2.1 and the Debtors dispute that a presumption exists. However, to the extent such a presumption were extant, the various subsections of Section 2.1 contain explicit exclusions, including the exclusion at issue. See Purchase Agreement § 2.1(p).

[7] "Our conclusion is nothing more than an application of the rule of construction that a court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect." (citations omitted).

1992)). Subsections (a), (c), (d), (i), (m), and (p) of Section 2.1 consistently use references to the Excluded Assets to limit the definition of "Purchased Assets." See Purchase Agreement § 2.1(a), (c), (d), (i), (m), (p).[8] Thus, there is no analogy between the Purchase Agreement and the contract in Defendants' description of Greylock Global Opportunity Master Fund Ltd v. Province of Mendoza where four exceptions were listed in one section and a fifth, "narrowly tailored exception" was listed elsewhere in the contract. See Defs.' Response at 15.

Defendants contend that "the parties affirmatively provided the purpose" for the exclusion of "insurance policies or the proceeds thereof" in Section 8.13 of the Purchase Agreement, a section entitled "Plan of Reorganization," by "expressly obligating the Debtors to use proceeds arising from the [Prepetition Policies] to pay products liability claims." Id.; see also, id. at 7. Defendants argue that because the Recovery Lawsuits do not relate to this purpose, the Recovery Lawsuits and the right to the Settlement Proceeds were transferred to Defendants. Id. at 15. Defendants' contention is wrong for several reasons. First, Section 8.13 did not obligate the Debtors to use policy proceeds at all. Section 8.13 provided only that the Debtors and Defendants "shall use their best efforts to ensure that any plan of reorganization or liquidation proposed by the [Debtors] … shall provide that existing insurance policies will continue to be used to pay any product liability claims." Purchase Agreement § 8.13. Second, Section 8.13 does not on its face "affirmatively provide the purpose" for or demonstrate a causal connection with any other provision of the Purchase Agreement. See Purchase Agreement

---

[8] See Purchase Agreement § 2.1(a) ("all accounts receivable other than any accounts receivable … arising out of or in connection with any Excluded Asset), (c) ("all raw materials, supplies, manufactured goods … other than Excluded Products"), (d) ("all deposits … other than deposits … in connection with or relating to any Excluded Asset"), (i) ("all Documents … but excluding … any Documents solely related to … any Excluded Asset), (m) ("all rights of [the Debtors] under or pursuant to all warranties … other than any warranties… pertaining to any Excluded Assets); (p) ("any rights, claims or causes of action … excluding those related to the Excluded Assets") (emphasis added).

§ 8.13 (located in Article VIII, entitled "Covenants"). In fact, the purpose or intention of Sections 2.1 or 2.1 are not affirmatively provided or expressly stated anywhere in the Purchase Agreement. Because the language of Section 2.1(p) of the Purchase Agreement is plain and unambiguous, the established rules for the construction of contracts apply, and "[t]he question is not what intention existed in the minds of the parties but what intention is expressed in the language used." Finkel v. St. Paul Fire & Marine Ins. Co., 2002 U.S. Dist. LEXIS 11581, *10 (D. Conn. 2002) (emphasis added). Each and every sentence, clause, and word of a contract should be given operative effect.[9]  Id. The intention expressed in Section 2.1(p) of the Purchase Agreement was to exclude from the transfer of assets to Defendants the Prepetition Policies and the rights, claims or causes of actions related to the Prepetition Policies.

---

[9] Defendants' argument that the "Debtors seek to make use of a broad provision, 'related to … Excluded Assets,' without giving effect to the other necessary limiting provision, which sets forth that which comprises the Excluded Asset at issue" is baseless. Defs.' Response at 12. The Prepetition Policies are undisputably Excluded Assets. Nothing in the Purchase Agreement's list of Excluded Assets serves to limit the exclusion of rights, claims, or causes of action related to the list of Excluded Assets.

## **CONCLUSION**

For the foregoing reasons, the Debtors' Motion for Summary Judgment should be granted and Defendants' Motion for Summary Judgment should be denied.

Dated: New York, New York
October 31, 2005

Respectfully submitted,

/s/ Michael P. Kessler
Michael P. Kessler, Esq. (MK 7134)
Gary D. Ticoll, Esq. (GT 1001)
Garrett A. Fail, Esq. (GF 4322)
WEIL, GOTSHAL & MANGES LP
767 Fifth Avenue
New York, New York 10153-0019
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for the Debtor