**Response Deadline: November 21, 2005, 5:00 p.m. (New York Time)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                       :
                                                            :   Chapter 11 Case No.
**TL ADMINISTRATION CORPORATION,**                          :
**et al. (f/k/a TWINLAB CORPORATION, et al.),**             :   03-15564 (RDD)
                                                            :
                                                            :   (Jointly Administered)
            Debtors.                                        :
------------------------------------------------------------x
                                                            :
**TL ADMINISTRATION CORPORATION,**                          :
**et al. (f/k/a TWINLAB CORPORATION, et al.),**             :
                                                            :   Adversary Proceeding No.
            Plaintiffs,                                     :
                                                            :   05-02376 (RDD)
        v.                                                  :
                                                            :
**IDEASPHERE, INC.,**                                       :
**AND TL ACQUISITION CORP.**                                :
                                                            :
            Defendants.                                     :
------------------------------------------------------------x

## DEBTORS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEBTORS' MOTION FOR SUMMARY JUDGMENT

WEIL, GOTSHAL & MANGES LLP
Attorneys for the Debtors
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Michael P. Kessler, Esq. (MK 7134)
Gary D. Ticoll, Esq. (GT 1001)
Garrett A. Fail, Esq. (GF 4322)

NY2:\1589147\07\Y26Z07!.DOC\78300.0003

TL Administration Corporation (f/k/a Twinlab Corporation), TL Administration Inc. (f/k/a Twin Laboratories, Inc.), and TL Administration (UK) Ltd. (f/k/a Twin Laboratories (UK) Ltd.) (collectively, the "Debtors") submit this supplemental brief in support of their motion for summary judgment (the "Debtors' Motion for Summary Judgment") in respect of the complaint (the "Complaint"), dated August 10, 2005, filed by the Debtors and the counterclaim (the "Counterclaim"), dated September 12, 2005, filed by Ideasphere, Inc. and TL Acquisition Corp. (collectively, the "Defendants") in this adversary proceeding.

## PRELIMINARY STATEMENT[1]

This supplemental brief is filed at the Court's request at the November 9, 2005, hearing (the "Hearing") at which the Court preliminarily granted the Debtors' Motion for Summary Judgment and preliminarily denied the Defendants' Motion for Summary Judgment. Per the Court's direction, this brief is limited to the issue of the meaning of the phrase "used in the Business" in the context of the Purchase Agreement.

The language in Section 2.1 of the Purchase Agreement that defines Purchased Assets to be "all the assets, properties, rights and claims … <u>used in the Business</u> (other than Excluded Assets)…." was raised by the Court <u>sua sponte</u>. <u>See</u> Purchase Agreement § 2.1 (emphasis added). Each of the subsections of Section 2.1 must be read in the context of this introductory language. By result of the words "used in the Business," the Purchased Assets are limited to the assets, properties, rights, and claims – including "any rights, claims or causes of action of [the Debtors] against third parties" – that were used in the manufacturing and

---

[1] Capitalized terms used herein and not otherwise defined herein have the respective meanings ascribed to them in the Debtors' Motion for Summary Judgment, the Debtors' Response to Memorandum of Law in Support of Defendants' Motion for Summary Judgment (the "Debtors' Response"), and the Debtors' Reply to Ideasphere's Opposition to Debtors' Motion for Summary Judgment (the "Debtors' Reply").

marketing of nutritional products.  See id. § 2.1(p).  The Recovery Lawsuits, which are lawsuits against brokers relating to insurance policies that expired prepetition, were not (and cannot be interpreted to be) claims or causes of action used in the Debtors' "Business," and therefore the Recovery Lawsuits and the Settlement Proceeds are not Purchased Assets.[2]

Second, the language of Section 8.9 of the Purchase Agreement was raised for the first time by Defendants at the Hearing.  Upon closer inspection, this contract provision does not bolster Defendants' position.

### PURCHASED ASSETS MUST BE USED IN THE BUSINESS

Pursuant to the Purchase Agreement and the Sale Order, the Debtors sold to Defendants not all, but substantially all their assets.  Section 2.1 of the Purchase Agreement, entitled "Purchase and Sale of Assets," provides, in relevant part, that Defendants shall purchase, acquire, and accept from the Debtors only the right, title, and interest in, to, and under certain defined "Purchased Assets."  See Purchase Agreement § 2.1.

Purchased Assets are defined in Section 2.1 to be "all the assets, properties, rights and claims of every kind and description of each of the Sellers used in the Business (other than Excluded Assets)…."  Id. (emphasis added).  "'Business' means the business of [the Debtors], including the manufacturing and marketing of nutritional products, including vitamins, minerals, supplements, herbals and tea, and diet, energy and sports nutrition products … provided, that for all purposes of [the Purchase Agreement], the term Business shall exclude any and all business of the [Debtors] relating to the Excluded Products."  See id. § 1.1.  "Excluded Products," in turn, are "any and all products that include (i) alkaloids from the herb known as 'Ma Huang,' also

---

[2] In addition, as the Debtors have argued and briefed previously, the Recovery Lawsuits and Settlement Proceeds are not Purchased Assets because they are claims related to Excluded Assets.

known as ephedra and (ii) Kava Kava." Id.  The enumerated list of "Excluded Assets" includes "all insurance policies or rights to proceeds thereof…"  See id. § 2.2(i).

It is "a fundamental rule of contract interpretation" that "when interpreting a contract, the entire contract must be considered so as to give each part meaning."  Brooke Group v. JCH Syndicate, 663 N.E.2d 635, 637 (N.Y. 1996) (citing Weiss v. Weiss, 418 N.E.2d 377, 379 (N.Y. 1981); Laba v. Carey, 29 N.Y.2d 302, 308 (1971)[3]; Cruden v Bank of N. Y., 957 F2d 961, 976 (2d Cir. 1992)).  Accordingly, the subsections of Section 2.1 must be read within the context of the introductory language of the section itself, viz., each subsection is limited to assets, property, rights, or claims used in the Business.[4]

### NEITHER THE RECOVERY LAWSUITS NOR THE SETTLEMENT PROCEEDS IS A PURCHASED ASSET

The Recovery Lawsuits were brought by third parties against the Debtors' insurance brokers and are not rights or claims used in the manufacturing and marketing of nutritional products.  Indeed, Defendants argued that the Recovery Lawsuits were rights related to brokerage services.  (Defs.' Mot. Summ. J. ¶¶ 1, 24; see also id. ¶ 8 (admitting "Recovery Lawsuits were brought against Marsh and Aon in their capacity as insurance brokers," and Settlement Proceeds to be used to "pay restitution to certain parties or their successors who used

---

[3] "Our conclusion is nothing more than an application of the rule of construction that a court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect." (citations omitted).

[4] See Purchase Agreement § 2.1 (a) (accounts receivables), (b) (agreements in connection with operations in Utah), (c) (raw materials, supplies, manufactured and purchased goods, work and goods in process, and finished goods), (d) (deposits), (e) (rights to real property, facilities, buildings, improvements, and fixtures), (f) (furniture and equipment), (g) (intellectual property), (h) (executory contracts), (i) (documents), (j)(permits), (k) (supplies), (l) (rights under non-disclosure, confidentiality, non-compete, and non-solicitation agreements), (m) (rights under or pursuant to warranties, representations and guarantees made by suppliers, manufacturers, and contractors), (n) (information management systems), (o) (goodwill), (p) (rights, claims, or causes of action against third parties).

Marsh or Aon's services to obtain insurance"); id. ¶ 25 (admitting that the Recovery Lawsuits were "tangentially related to Excluded Assets").) Neither the Recovery Lawsuits nor the Settlement Proceeds are "used in the Business" and accordingly are not Purchased Assets.

As noted by the Court, a recent district court decision is analogous to instant case. See Bank of New York v. Janowick, No. 4:03CV-20-M, 2005 U.S. Dist. LEXIS 16728 (W.D. Ky. Aug. 10, 2005). In Janowick, the court determined the entitlement to unanticipated proceeds of an insurance company's demutualization as between Southwire Company ("Southwire") and Century Aluminum ("Century"), a purchaser of Metalsco, one of Southwire's subsidiaries. Id. at *4. One of Southwire's subsidiaries had established a pension plan for the benefit of its employees. Id. The funds that the subsidiary contributed to the plan were held by the Bank of New York. Id. at *5. When the plan was terminated, pursuant to federal law, the plan funds were used to purchase termination annuities from the Prudential Insurance Company of America ("Prudential"). Id. The Bank of New York, as the plan's trustee, was the contract holder of the annuities. Id. Prudential subsequently converted its capital structure from that of a mutual insurance company to that of a stock company and issued common stock to its policy holders. Id. at *6. Prudential issued stock to the Bank of New York. The Bank of New York commenced a stakeholder action because it received conflicting claims from, among others, Century and Southwire. Id. These proceeds were entirely unanticipated and not specifically contemplated in the negotiations between Century and Southwire. Id. at *7.

The stock purchase agreement between Southwire and Century provided that Century would purchase certain "properties and assets necessary for the operation of the Business." Id. at *8. The "Business" in that case was "the business of converting alumina into primary aluminum … and the Plant and the sale of such primary aluminum…." Id. at *9. The

purchase agreement listed the defined "Assets" included in the sale. Id. at *8-9. The Assets included

> "all of the assets … which are used or intended for use in or in connection with the Business … and with respect to contract rights … all contracts, agreements and other arrangements used or intended to be used in or relating to the conduct of the Business, include[ing] … all claims, causes of action … pertaining to, or arising out of, the Business… [and] all other assets, rights and claims of every kind and nature used in the Business."

Id. at *8-9. Southwest asserted that the "long terminated pension plan, and any rights thereunder" did not constitute "Assets" intended for use in the manufacture and sale of aluminum. Id. at 9. The court agreed. Id.

In a second case, also noted by the Court, Execulines, Ltd. v. Tel-America of Salt Lake City, Inc., a dispute arose between Execulines, Ltd. ("Execulines") and Tel-America, Inc., the purchaser of Execulines' assets, as to whether an unanticipated credit from a telephone service provider constituted an "Asset" as defined in the asset purchase agreement. 826 P.2d 1333, 1334 (Idaho 1991). The purchase agreement in that case defined "Assets" as "all of the assets and property of [Execulines] used in its business operations…." Id. Notably, the court there found, after "[e]xamining the plain meaning of the definition of 'assets,'" that the unanticipated credit was not used in Execulines' business operations. Id. at 1135. The credit was unknown and, indeed, not in existence at the time of the sale. Id.

Similarly, in the instant case, the Recovery Lawsuits are not rights or claims used in the Business. The Recovery Lawsuits are based on the Debtors' claims against insurance brokers in connection with the Debtors' purchase of prepetition insurance policies. It is undisputed that the Prepetition Policies are Excluded Assets relating to Excluded Products. Moreover, the Purchaser did not assume the Debtors' relationships with Marsh or Aon, or any brokerage contracts in connection therewith, let alone the contracts in connection with expired

insurance policies excluded from the sale. Accordingly, the Recovery Lawsuits and Settlement Proceeds are not "used in the Business" and are not Purchased Assets under the Purchase Agreement.

## REFERENCE TO SECTION 8.9 OF THE PURCHASE AGREEMENT IS INAPPOSITE

At the Hearing, Defendants argued for the first time that Section 8.9 of the Purchase Agreement supported their position. That section, entitled, "Receipt of Property Relating to Purchased Assets," provides:

> If [the Debtors] … shall receive any money, check, note, draft, instrument, payment or other property relating to or as proceeds of the Purchased Assets or the Assumed Liabilities or any part thereof, [the Debtors] shall receive all such items in trust for, and as the sole and exclusive property of, [Defendants] and immediately upon receipt thereof, shall notify [Defendants] in writing of such receipt and shall remit the same … to [Defendants…

Purchase Agreement at 8.9. As neither the Prepetition Policies nor the Recovery Lawsuits are Purchased Assets, this contract provision does not bolster Defendants' position. The Settlement Proceeds are not related to or proceeds of any Purchased Asset or Assumed Liability. The Settlement Proceeds are related to the Recovery Lawsuits, which as discussed above and fully briefed, are not Purchased Assets. The meaning and context of Section 8.9 is crystal clear. If the Debtors were to receive payment relating to the proceeds of a Purchased Asset, they must remit such proceeds to Defendants. For example, if a customer were to make a payment to the Debtors on account of a purchased account receivable, or a claim or lawsuit related to such unpaid account receivable, Section 8.9 obligates the Debtors to pay such amount to Defendants. The sole purpose of Section 8.9 is to ensure Defendants receive the benefit of the assets they purchased under Section 2.1. <u>Section 8.9 does not define or expand the list of Purchased Assets.</u>

## **CONCLUSION**

For the foregoing reasons and the reasons contained in the Debtors' previous pleadings, the Debtors' Motion for Summary Judgment should be granted and Defendants' Motion for Summary Judgment should be denied.

Dated: New York, New York
November 16, 2005

                                      Respectfully submitted,

                                      /s/ Michael P. Kessler
                                      Michael P. Kessler, Esq. (MK 7134)
                                      Gary D. Ticoll, Esq. (GT 1001)
                                      Garrett A. Fail, Esq. (GF 4322)
                                      WEIL, GOTSHAL & MANGES LP
                                      767 Fifth Avenue
                                      New York, New York 10153-0019
                                      Telephone: (212) 310-8000
                                      Facsimile: (212) 310-8007

                                      Attorneys for the Debtors