KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Matthew J. Williams, Esq. (MW 4081)
Jonathan T. Koevary, Esq. (JK 5730)

Attorneys for Ideasphere, Inc. and TL Acquisition Corp.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————x
                                          :
**In re:**                                :     **CHAPTER 11**
                                          :
**TL ADMINISTRATION CORPORATION et al.**  :
**(f/k/a/ TWINLAB CORPORATION et al.),**  :
                                          :
                                          :     **Case No. 03-15564 (RDD)**
               **Debtors.**               :
——————————————————————x
                                          :
**TL ADMINISTRATION CORPORATION et al.**  :
**(f/k/a/ TWINLAB CORPORATION et al.),**  :     **Adv. No. 05-02376 (RDD)**
                                          :
               **Plaintiffs,**            :
                                          :
            **- v. -**                    :
                                          :
**IDEASPHERE INC.,**                      :
**AND TL ACQUISITION CORP.**              :
**Defendants.**                           :
——————————————————————x

## SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Defendants Ideasphere, Inc. and TL Acquisition Corp. (collectively

"Defendants"), by their attorneys, Kramer Levin Naftalis & Frankel LLP, hereby submit

this supplemental brief in support of Defendants' Motion for Summary Judgment against

Plaintiffs TL Administration Corp., TL Administration Inc., and TL Administration UK's (collectively, the "Debtors").[1]

## PRELIMINARY STATEMENT

On October 14, 2005, the above captioned parties cross-moved for summary judgment (the "Cross Motions"). This Court heard oral argument on the Cross Motions on November 9, 2005. Immediately following oral argument, this Court issued a preliminary oral ruling in favor of the Debtors. The ruling was "preliminary" in that its outcome was dependant upon an issue raised *sua sponte* by the Court during oral argument. Accordingly, this Court granted leave for the parties to brief the newly raised issue prior to entry of this Court's final ruling.

Specifically, following this Court's discussion of Section 8.9 of the Purchase Agreement (providing that "if Sellers . . . shall receive any money, check, note, draft, instrument, payment or other property *relating to* or as proceeds of the Purchased Assets," they must immediately remit such items to the Defendants) (Purchase Agreement § 8.9),[2] this Court examined certain language of the asset transfer clause and underlying definitions of the Purchase Agreement and averred that the Purchase Agreement did not provide for the transfer of Recovery Lawsuits and the Settlement

---

[1] The parties to this adversary proceeding cross-moved for summary judgment on October 14, 2005. Capitalized terms used herein and not otherwise defined herein have the respective meanings ascribed to them in the Defendants' Memorandum of Law in Support of their Motion for Summary Judgment dated October 14, 2005 (the "Defendants' Motion").

[2] The Defendants note that the Debtors have already conceded that the Settlement Proceeds and the Recovery Lawsuits are "related to" the Purchased Assets. *See* Debtors' Response at 3 ("Defendants' logic is flawed and disregards the basic concept that one thing may be related to more than one other thing. The Debtors do not seek to "reclassify" anything. Just as a child may be related to both of his parents and all of his siblings, a claim or lawsuit may be related to both a plaintiff and a defendant, or both a defendant and a cause of action, and the Recovery Lawsuits may be related to both 'brokerage services' and the Prepetition Policies.").

2

Proceeds to the Defendants by reason that only assets "used in the Business" were

transferred to the Defendants and that the assets at issue did not meet this description.

## ARGUMENT

### I. The Language Provides for the Transfer of the
### Recovery Lawsuits & Settlement Proceeds

Section 2.1 of the Purchase Agreement provides for the transfer of

Purchased Assets to the Defendants. *See* Purchase Agreement § 2.1. Purchased Assets

are defined as

> all the assets, properties, rights and claims of every kind and
> description of each of the Sellers *used in the Business (other than
> Excluded Assets)*, whether real or personal, *tangible or intangible,
> vested or unvested, contingent or otherwise,* wherever located and
> whether existing now or hereinafter acquired, as the same shall
> exist on the Closing Date, whether or not any of such assets,
> properties, rights or claims *have any value for accounting purposes
> or are carried or reflected on or specifically referred to in books
> or financial statements of the Sellers, including* the following . . .

> (p) any rights, claims or causes of action of Sellers against third
> parties relating to the Business or the Purchased Assets arising out
> of events occurring on or prior to the Closing Date, but excluding
> those related to the Excluded Assets or the Excluded Products and
> those specified in Section 2.2(j).

*Id.* (emphasis added).

> "Business" means the business of the Sellers, *including* the
> manufacturing and marketing of nutritional products, including
> vitamins, minerals, supplements, herbals and tea, and diet, energy
> and sports nutrition products including powders, bars, drinks and
> other health products sold through health and natural food stores,
> national and regional drug store chains, supermarkets, mass
> merchandise retailers, military post exchanges and other channels;
> provided, that for all purposes of this Agreement, the term
> Business shall excluded any and all business of Sellers relating to
> the Excluded Products.

3

*Id.* § 1.1. (emphasis added).

> The word "including" or any variation thereof means "<u>including, without limitation</u>" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

*Id.* § 1.3. (emphasis supplied).

This Court has suggested that the Recovery Lawsuits and the Settlement Proceeds were not transferred to the Defendants on the grounds that they were not assets "used in the Business." Respectfully the Defendants believe that this narrow application of the phrase "used in the Business" is unwarranted.

This Court reasoned that the Recovery Lawsuits and the Settlement Proceeds did not represent assets used in the Business, at least partially on the grounds that these assets were not itemized in the definition of Business itself. However, it must be noted that the definition of Business in the Purchase Agreement is, by its terms, broad. The placement of the word "including" near the beginning of the definition (a word which the parties expressly provided to be read broadly) and the reservation of express exclusions at its end make the definition unexhaustive by its terms. Thus it is impossible by reference to the definition of "Business" alone to conclude that the rights to the Settlement Proceeds and the Recovery Lawsuits, as tort causes of action against insurance brokers, are necessarily not assets used in the Business.

This Court further suggested that the Recovery Lawsuits and the Settlement Proceeds, being single payments from insurance brokers with whom the Defendants no longer do business and not something akin to vitamin sales were not the sort of core assets that one contemplates as being "used in the Business." However,

4

courts have long recognized the notion that these sorts of intangible assets (the transfer of which were expressly contemplated (*see* Purchase Agreement § 2.1)) – the reliance upon which is often a vital business planning tool – are as much assets used in the Business as the tangible assets. *See Grain Merchants of Indiana, Inv. v. Union Bank and Savings Co.*, 286 F.Supp. 597, 605 (N.D. Ind. 1968) ("[a] stock of accounts receivable is an essential tool of modern business. It is an asset used to generate income, just as plants and equipment are assets used to generate income"); *Cono v. Wheatley (In re Wheatley)*, 158 B.R. 140, 143 (Bankr. W.D. Mo. 1993) ("[t]he parties intended for receivables to be used in the business").

Notably, the parties did not contemplate a restrictive application of assets "used in the Business" as the Purchase Agreement expressly transferred "tangible or intangible" assets to the Defendants. Purchase Agreement § 2.1. A key parenthetical set forth in the asset transfer provision provides for the sale of assets "used in the Business *(other than Excluded Assets).*" *Id.* (emphasis added). This parenthetical demonstrates that each asset itemized as Excluded is an asset which the parties viewed as "used in the Business," else there would have been no purpose in placing such a restriction. *See* Debtors' Reply at 9 ("[e]ach and every sentence, clause, and word of a contract should be given operative effect.").

Turning to the itemized list of Excluded Assets a number of assets are listed which demonstrate that the parties did not intend "used in the Business" to be read as narrowly as is required to rule against the Defendants on the Cross Motions, and that the parties in fact defined as "in the business" many assets no differently positioned

KL2:2419354.1

within the business operations than the causes of action presently at issue.. For example,
the Excluded Assets include:

> (g) any (i) Tax Returns of Sellers books and records that Sellers are
> required by Law to retain or that relate to Tax Returns of Sellers . .
> . (ii) minute books; and (iii) documents relating to proposals to
> acquire the Business by Persons other than Purchasers;
>
> (h) any claim, right or interest of Sellers in or to any refund, rebate,
> abatement or other recovery for Taxes, together with any interest
> due thereon or penalty rebate arising therefrom . . . ;
>
> (j) any avoidance actions of the Chapter 11 estates of the Sellers
> pursuant to Sections 540-549 of the Bankruptcy Code other than
> such causes of action that may exist against vendors, suppliers, or
> customers of the Sellers, which causes of action shall be Purchased
> Assets.

*Id.* § 2.2.

The Defendants submit that (i) Section 2.1 of the Purchase Agreement
makes clear that each of the Excluded Assets are assets "used in the Business"; and (ii)
the aforementioned Excluded Assets are no differently "used in the Business" than are
the rights to the Recovery Lawsuits or the Settlement Proceeds.

For example, a logical reading of Section 2.2(j), when read in conjunction
with the remainder of the Purchase Agreement is as follows:  Causes of action generally
will be transferred to the Defendants.  A carve out was made for avoidance actions.  Yet,
this carve out did not extend to rights against "vendors, suppliers, or customers of the
Sellers."  By definition, the avoidance actions referenced in Section 2.2(j) must be assets
used in the Business, else the avoidance action carve out would be unnecessary and
nonsensical.  This is perfectly in accordance with the broad definition of "Business"
provided in the Purchase Agreement, and the Recovery Lawsuits and Settlement
Proceeds, like the avoidance actions, likewise fall within the same purview.

6

In fact, a vital part of any asset purchase transfer is ability of the purchaser to ensure a continued relationship with the Seller's vendors.  The Defendants insisted upon and the Debtors agreed to, a broad cause of action transfer provision in part to ensure that a potentially overzealous creditors' committee or estate would not be able to assert causes of action against the vendors, service providers and customers with whom the Defendants would need to continue to do business post-closing.  The Debtors retention of the right to bring suit against Marsh or Aon would frustrate the purchasers' ability to chose for itself whether to use Marsh or Aon as an existing vendor – a right in and of itself purchased in the agreement. [3]

**B.**    **Cases are Distinguishable; New York Law Applies**

In support of its preliminary ruling, this Court cited to two cases, *Bank of New York v. Janowick*, 2005 U.S. Dist. LEXIS 16728 (W.D. Ky. Aug. 10, 2005) and *Execulines Ltd. v. Tel-America of Salt Lake City, Inc.*, 826 P.2d 1333 (Idaho App. 1991). Both of these cases are distinguishable from the present matter.

First, *Bank of New York* is distinguishable on its face as, in that case, the parties narrowly defined the term "Business": "the Stock Purchase Agreement defines 'Business' to mean 'the business of converting alumina into primary aluminum at the Plant and the sale of such primary aluminum, as conducted by Southwire and its Affiliates." *Id.* at *8.   Thus, the Court found that this definition of "Business" itself

---

[3] It should be noted that at oral argument, this Court stated in making its preliminary ruling on the meaning of "in the business" that it believed it unlikely that the Defendants would continue to use the same insurance brokers post-acquisition due to the claims raised in the Recovery Lawsuits.  In fact, as shown in the Certificate of Insurance attached hereto as Exhibit A, which was issued by AON Risk Services on behalf of Defendants post-acquisition, the Defendants have continued to use AON's brokerage services. Defendants have continued to need these services because essentially all of Defendants' customers demand that Defendants evidence through certificates of insurance issued by Defendants' broker that Defendants carry insurance.  Indeed, the necessity to use insurance brokers to obtain coverage and provide evidence thereof is no less an absolute necessity in the business of Defendants (and formerly of Debtors) than purchasing raw materials.  Without the same, selling Defendants' products is an impossibility.

7

necessarily precluded a reading of the stock purchase agreement which would have

transferred to the purchaser the funds derived from annuity contracts arising out of the

seller's long since terminated pension plan, stating that such funds did "not constitute

'Assets' intended for use *in the manufacture and sale of aluminum*." *Id.* at *8 (emphasis

added). As discussed above, the definition of "Business" in the instant case is much

broader, encompassing not only the manufacture and sale aspects of sellers' business, but

all aspects of that business except as expressly excluded.

Moreover, in the underlying stock purchase agreement in *Bank of New

York* and the related "redemption agreement", the Court found that the parties had

specifically considered the seller's pension fund and related annuity contracts and had

expressly held, or "redeemed," rights in and to such assets for the sellers, finding, "[t]o

the extent there were any rights to the annuity contracts remaining in [seller], those rights

were *expressly redeemed* out as Unwanted Property." *Id.* at 11. (emphasis added). In the

present case, and as heavily briefed in previous filings, no such express exclusion for the

relevant causes of action against insurance brokers exists under the Purchase Agreement.

To the contrary, the Purchase Agreement expressly transfers causes of action, whether

tangible or intangible, vested or unvested, contingent or otherwise, used in any aspect of

the sellers' business, unless expressly excluded (which is not the case here).

Second, while in the *Execulines* case, the term "used in the business

operations" was not so limited, the case is equally distinguishable. Taking the position

that "we look not only at the specific definitions of the contract, but also at the contract as

a whole," critical to the court's holding was the fact that there was an "absence of any

clause concerning after-acquired assets, that the parties thought that they had accounted

8

for all assets of the partnership." *Id.* at 1335-36.[4]  In the case at Bar, the parties expressly

provided for the transfer of assets "vested or unvested, contingent or otherwise . . .

existing now or hereinafter acquired . . . whether or not . . .carried on or reflected on or

specifically referred to in books or financial statements of Sellers . . . ." (Purchase

Agreement § 2.1).

   Unlike *Exculines* (or *Bank of New York*), the parties in the instant matter

*expressly* contemplated the creation of uncontemplated assets.  In this case, while the

Defendants would agree that the particular assets at issue were unanticipated, because the

transfer of assets included those "vested or unvested, contingent or otherwise," the fact

that the these particular assets were uncontemplated is of no moment.

   Moreover, in *Execulines*, the Court also found that, unlike here, the parties

had expressly provided for retention by the seller of the credits at issue in that case.

Specifically, the parties were aware of a dispute with a third-party telephone service

provider that could, upon conclusion, allow for the provision of credits to the seller for

calendar year 1985.  *Id.* at 1335-36.  The parties provided specifically for this possibility

and explicitly agreed in Section 2.4 of their agreement that any such credits would be

retained by the seller.  *Id.*  The Court found this provision applicable for the unanticipated

credit issued for calendar year 1986 that was at issue before the Court, holding:

> The language of Section 2.4 indicates that where the parties were
> aware of a potential credit for telephone services, their intent was
> that the credit, if realized, would be the property of [seller].  A
> similar intent may be imparted to the parties as to the unanticipated
> credit.

---

[4] While the Court in *Bank of New York* found no reason to reach this issue, the language of the stock
purchase agreement quoted in that case likewise contained no provision for the transfer of unvested rights.

*Id.*. Once again, in the present case, not only is there no similar provision in the Purchase Agreement, but the Purchase Agreement provides express language requiring the transfer to Defendants of the unanticipated and, at the time, unvested rights at issue.

To the extent "uncontemplated asset" decisions are applicable, then, as the Purchase Agreement is governed under New York Law (*see* Purchase Agreement § 13.6), it is appropriate to call attention to New York's position on the matter. In *Bush Homes, Inc. v. Franklin Nat'l. Bank of Long Island*, 24 A.D.2d 1012, 266 N.Y.S.2d 89 (App. Div. 2d Dep't. 1965), the plaintiffs brought suit against a bank alleging breach of commitment to lend money, dishonoring checks drawn on defendant, exacting usurious payments and reneging on agreements which renewed various promissory notes. The bank moved for summary judgment on the grounds that, because the plaintiffs had sold substantially all of its assets prior to suit, they had no standing to bring the action against the bank.

The underlying contract provided for the transfer of "all of the sellers causes of action . . . and all other assets, tangible and intangible, if any . . . used . . . [i]n the business' of sellers." *Id.* at 1013, 90. "In the business' of the sellers . . . was described as wholesale lumber distribution and the manufacture and erection and construction of pre-fabricated buildings." The plaintiffs argued that this language did not contemplate the transfer of the causes of action against the bank.

The court asserted that "[u]nder the circumstances, the construction to be given to the provisions governing the extent of the assets included in the sale 'depends upon the sense in which the words were used in view of the subject to which they relate,' and therefore a trial should be held, at which the court should take 'proof of collateral facts and surrounding circumstances." *Id.* at 1013, 91 (citing *Petrie v. Trustees of*

*Hamilton* College, 158 N.Y. 458, 464, 53 N.E. 216, 217; *Lachs v. Fidelity & Cas. Co. of N.Y.*, 306 N.Y. 357, 364, 118 N.E.2d 555, 558). On these grounds Appellate Division upheld denial of summary judgment for want of a further fact determination at trial. *See also Ground to Air Catering Inc. v. Dobbs Inter'l Services, Inc.*, 285 A.D.2d. 931, 728 N.Y.S.2d 308 (App. Div. 3d Dep't. 2001) (reversing lower court ruling that goodwill did not qualify as asset "used in the business" even though not expressly listed as an asset).

As set forth in *Bush*, it is appropriate for the Court to look at collateral facts to determine the meaning of "in the business." Unlike *Bush*, however, to do so in this case does not require a trial as there are sufficient collateral facts within the Purchase Agreement itself to conclude that the Recovery Lawsuits and Settlement proceeds are Purchased Assets in the business.

As an initial matter, the definition of "Business" within the Purchase Agreement is much broader than that in *Bush* (which like *Bank of New York* was narrowly limited to the manufacture, distribution and construction aspects of the relevant business). Whereas in *Bush*, the Court was unwilling to make a final decision without further facts, in the present case the definition of "Business" is so broad as to require inclusion of the assets at issue. Moreover, collateral provisions within the Purchase Agreement support a finding that the Recovery Lawsuits and Settlement Proceeds are "in the business." These provisions include, but are not limited to, (i) the parenthetical "(other than Excluded Assets)" immediately following the phrase "used in the Business"; (ii) examples of Excluded Assets, including the avoidance action carve outs; (iii) the clause providing for the transfer of "tangible or intangible" assets; and (iv) the clause providing for the transfer of assets "vested or unvested, contingent or otherwise." There

11

is no question that unanticipated, unvested rights were transferred to the Defendants. In addition, there is no practical, common sense reading that can be given to those Excluded Assets defined under the language of the Purchase Agreement as being "in the business" that would not necessarily require that the Recovery Lawsuits and Settlement Proceeds would be likewise so defined.[5]

## CONCLUSION

The Recovery Lawsuits and Settlement Proceeds are assets "used in the Business" of the Debtors within the meaning of the Purchase Agreement. The parties expressly defined "Business" quite broadly, and the list of Excluded Assets provides a host of exclusions no differently used in the Business than are the Recovery Lawsuits and the Settlement Proceeds. Furthermore, it is clear that the parties fully considered the possibility that causes of action not specifically considered at the time of transfer would later arise and expressly transferred those actions to the Defendants.

As Debtors have previously conceded, the Recovery Lawsuits and Settlement Proceeds are not themselves Excluded Assets (the Debtors now arguing only (and Defendants submit erroneously) that they "relate to" Excluded Assets). As non-Excluded Assets that are, as set forth herein, causes of action used in the business, the Recovery Lawsuits and Settlement Proceeds are, in fact, Purchased Assets. As such, and pursuant to Section 8.9 of the Purchase Agreement, "any money, check, note, draft, instrument, payment or other property relating to" this Purchased Asset is property of the Defendants.

---

[5] Third, although no more binding on this Court than the *Bank of New York* and *Execulines* decisions, it is important to note that the dissent in *Bush Homes* would have held for the bank as a matter of law asserting strongly that the "language effectively and without restriction deprived the plaintiffs of the right to sue on the causes here alleged" and asserting further that "the causes of action clearly relate to and arise from the business of the plaintiffs as described in the papers of title." *Bush Homes*, 266 N.Y.S.2d at 91 *(dissent)*.

12

Dated: New York, New York,
November 16, 2005

                    KRAMER LEVIN NAFTALIS &
                    FRANKEL LLP


                    By: /s/ Matthew J. Williams
                    Matthew J. Williams, Esq. (MW 4081)
                    Jonathan T. Koevary, Esq. (JK 5730)
                    1177 Avenue of the Americas
                    New York, New York 10036
                    (212) 715-9100

                    Attorneys for Defendants

13