**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                       :
                                                            :    Chapter 11 Case No.
**TL ADMINISTRATION CORPORATION,**                          :
**et al. (f/k/a TWINLAB CORPORATION, et al.),**             :    03-15564 (RDD)
                                                            :
                                                            :    (Jointly Administered)
          **Debtors.**                                      :
------------------------------------------------------------x
                                                            :
**TL ADMINISTRATION CORPORATION,**                          :
**et al. (f/k/a TWINLAB CORPORATION, et al.),**             :
                                                            :    Adversary Proceeding No.
          **Plaintiffs,**                                   :
                                                            :    05-02376 (RDD)
          v.                                                :
                                                            :
**IDEASPHERE, INC.,**                                       :
**AND TL ACQUISITION CORP.**                                :
                                                            :
          **Defendants.**                                   :
------------------------------------------------------------x

**DEBTORS' REPLY TO SUPPLEMENTAL BRIEF IN**
**SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

WEIL, GOTSHAL & MANGES LLP
Attorneys for the Debtors
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Michael P. Kessler, Esq. (MK 7134)
Gary D. Ticoll, Esq. (GT 1001)
Garrett A. Fail, Esq. (GF 4322)

NY2:\1591088\03\Y3_W03!.DOC\78300.0003

The Debtors[1] submit this reply to the supplemental brief ("<u>Defendants' Supplemental Brief</u>") in support of Defendants' Motion for Summary Judgment in respect of the Complaint, dated August 10, 2005, filed by the Debtors, and the Counterclaim, dated September 12, 2005, filed by Defendants, in this adversary proceeding.

## PRELIMINARY STATEMENT

Defendants' Supplemental Brief is replete with inaccurate and unsubstantiated assertions upon which Defendants rely to support their motion for summary judgment. The Recovery Lawsuits and the Settlement Proceeds are not "Purchased Assets" for two independent reasons: (i) they are not "used in the Business," and (ii) even if they are "used in the Business," they are clearly and closely "related to" the Prepetition Policies which are "Excluded Assets."[2] As detailed below, Defendants' arguments collapse under scrutiny, the Debtors' Motion for Summary Judgment should be granted, and Defendants' Motion for Summary Judgment must be denied.

## THE DEBTORS' REPLY

Defendants rely on false and misleading statements of fact and conclusions to support their arguments and distract attention from the relevant issues in these dueling summary judgment actions. The Debtors reply to the most egregious assertions, in turn, below.

---

[1] Capitalized terms used herein and not otherwise defined herein have the respective meanings ascribed to them in (i) the Debtors' Motion for Summary Judgment, (ii) the Debtors' Response to Memorandum of Law in Support of Defendants' Motion for Summary Judgment (the "<u>Debtors' Response</u>"), (iii) the Debtors' Reply to Ideasphere's Opposition to Debtors' Motion for Summary Judgment (the "<u>Debtors' Reply</u>"), and (iv) the Debtors' Supplemental Brief in Support of the Debtors' Motion for Summary Judgment (the "<u>Debtors' Supplemental Brief</u>").

[2] Defendants admitted at the Hearing the Recovery Lawsuits and the Settlement Proceeds are related to the Prepetition Policies: "Your Honor, I won't stand here and tell you that there isn't some sort of relation between the cause of action we are talking about here and the insurance policy, because there is." Hr'g Tr. 27: 17-21, Nov. 9. 2005; <u>see also</u> id. 29: 5-6 ("conceding that there is some sort of relationship to the Excluded Assets here").

**The Recovery Lawsuits and Settlement Proceeds Are Not Related to Purchased Assets**

In the first example of a false and misleading statement, Defendants allege "the Debtors have already conceded that the Settlement Proceeds and the Recovery Lawsuits are 'related to' the Purchased Assets." Defs. Supp. Br. 2, fn 2 (quoting Debtors' Resp. 3). The Debtors have made no such concessions and to the contrary have consistently argued that the Settlement Proceeds and the Recovery Lawsuits relate to Excluded Assets, rather than Purchased Assets. See, e.g., Debtors' Resp. 3-4. The very language Defendants quote to bolster their assertion belies their claim and supports the Debtors'. Although the Debtors did argue "one thing may be related to more than one other thing," and the Debtors did state "the Recovery Lawsuits may be related to both 'brokerage services' and the Prepetition Policies," the Debtors did not say and do not believe that brokerage services are Purchased Assets or that Settlement Proceeds and the Recovery Lawsuits are somehow otherwise related to a Purchased Asset. As the Debtors have maintained, because the Recovery Lawsuits and the Settlement Proceeds are related to the Prepetition Policies, the Recovery Lawsuits and Settlement Proceeds are excluded from the Purchased Assets. See Debtors' Compl. 9; Debtors' Mot. Summ. J. 8; Debtors' Reply 2. The suggestion that the Recovery Lawsuits and Settlement Proceeds may also be related to "brokerage services" is irrelevant and, if true, would still not bring the Recovery Lawsuits and the Settlement Proceeds within the definition of Purchased Assets.

**The Recovery Lawsuits and Settlement Proceeds Are Not Used in the Business**

Without citation to the Hearing transcript, Defendants argue the "Court reasoned that the Recovery Lawsuits and the Settlement Proceeds did not represent assets used in the Business, at least partially on the grounds that these assets were not itemized in the definition of Business itself." Defs. Supp. Br. 4. Defendants assert the use of the word "including" in the

definition of "Business" supports their contention that the definition is "by its terms, broad." Id. Defendants quickly reveal the reasoning for their construction of this straw-man argument: they conclude "it is impossible by reference to the definition of 'Business' alone to conclude that the rights to the Settlement Proceeds and the Recovery Lawsuits, as tort causes of action against insurance brokers, are necessarily not assets used in the Business." Id. Critically, as many times as they urge a broad definition of "Business," Defendants fail to explain how "the Settlement Proceeds and the Recovery Lawsuits, as tort causes of action against insurance brokers," could be used in the Business.

Again without citation to the Hearing transcript, Defendants state the Court "suggested that the Recovery Lawsuits and the Settlement Proceeds … were not the sort of core assets that one contemplates as being 'used in the Business.'" Id. However, the phrase "core assets" does not appear in the Hearing transcript or in the definition of Purchased Assets and use of such a phrase is inappropriate. Only the defined Purchased Assets were transferred to Defendants. Defendants quote case law to support "the notion" that intangible assets such as accounts receivables have been considered assets used in sellers' businesses. Id. at 5. The Debtors do not disagree that the definition of Purchased Assets includes certain real and personal, tangible and intangible, vested and unvested, and contingent and liquidated assets, properties, rights and claims that existed at the time of the sale and that were acquired thereafter, including certain accounts receivable. See Purchase Agreement §2.1(a). Nonetheless, the Recovery Lawsuits and the Settlement Proceeds are not accounts receivables, and they are not Purchased Assets because (i) they are not used in the Business, and (ii) they are claims related to Excluded Assets.

**Excluded Assets Need Not Be Used In the Business**

Section 2.1 of the Purchase Agreement defines Purchased Assets to be "all the assets, properties, rights and claims … used in the Business (other than Excluded Assets)…." Purchase Agreement § 2.1. Defendants say that the parenthetical "(other than Excluded Assets)" is "key" because it "demonstrates that each asset itemized as Excluded is an asset which the parties viewed as 'used in the Business,' else there would have been no purpose in placing such a restriction." Defs. Supp. Br. 5. Defendants rely repeatedly on this false assumption throughout their brief in an attempt to strip the phrase "used in the Business" of any meaning and to similarly argue the limitation on transferred claims in Section 2.1(p) is meaningless.

In the phrase quoted above, Defendants use as a defined term the word "Excluded" as an adjective to describe assets. The Purchase Agreement does not, however, define the word "Excluded" on its own. Section 2.2 of the Purchase Agreement defines Excluded Assets. See Purchase Agreement §2.2. Notably, the phrase "used in the Business" does not appear within the definition of Excluded Assets in Section 2.2. The phrase "used in the Business" appears only in Section 2.1, which defines Purchased Assets. Thus, the Purchase Agreement provides only that Purchased Assets include the assets, properties, rights and claims used in the Business and that the Purchased Assets exclude the Excluded Assets. In other words, the purpose of the parenthetical language was to exclude the Excluded Assets from the assets, properties, rights and claims being purchased. It does not follow logically from this that all Excluded Assets are used in the Business. Some Excluded Assets may be used in the Business; others may not. Defendants' conclusion that each Excluded Asset is an asset which the parties viewed as "used in the Business" is wrong and illogical.

Fatally for Defendants' argument, by definition, certain Excluded Assets <u>cannot</u> be used in the Business. "Business" is a defined term that "shall exclude any and all business of

the [Debtors] relating to the Excluded Products." See Purchase Agreement § 1.1.[3] The enumerated list of Excluded Assets includes "Specified Assets," see id. at §2.2(d), which are any assets of the Debtors that relate solely to the Excluded Products," id. at §1.1. The Specified Assets are thus clear examples of Excluded Assets that cannot be used in the Business. The list of Excluded Assets also includes "all insurance policies or rights to proceeds thereof." See id. at §2.2(i). As Defendants concede the Prepetition Policies provided coverage for the Debtors' ephedra-related liabilities, see Countercl. 10, at ¶ 10, the Prepetition Policies are additional examples of Excluded Assets that cannot be used in the Business.

Nonetheless, Defendants build arguments based on their falsely constructed foundation that Excluded Assets are defined as assets "used in the Business." See Defs. Supp. Br. 5-7. The Debtors reject Defendants submission that "Section 2.1 of the Purchase Agreement makes clear that each of the Excluded Assets are assets 'used in the Business." Id. at 6. Defendants provide additional examples of Excluded Assets "no differently positioned within the business operations than the causes of action presently at issue." Id. at 5-6. But these examples do nothing to support Defendants' Motion for Summary Judgment; instead, they support the Debtors' explanation supra that Excluded Assets need not be used in the Business by virtue of the language in Section 2.1.

**Defendants' Analysis of Section 2.2(j) is Irrelevant and Incorrect**

Defendants attempt a "logical reading" of Section 2.2(j) "in conjunction" with their false premise. See id. at 6. Defendants' reading is irrelevant, as the relevant subsection of Section 2.2 for the purposes of the instant summary judgment pleadings is Section 2.2(i).

---

[3] "Excluded Products," in turn, are "any and all products that include (i) alkaloids from the herb known as 'Ma Huang,' also known as ephedra and (ii) Kava Kava." Id.

Defendants' reading is nonetheless incorrect. Section 2.2(j) provides that the Debtors' avoidance actions pursuant to Bankruptcy Code sections 540-549 are Excluded Assets; provided, however, such actions against vendors, suppliers, or customers of the Debtors would be Purchased Assets. See Purchase Agreement §2.2(j). Section 2.2(j) is wholly consistent with Section 2.1(p). Read together with the introductory language of Section 2.1, these sections provide that all rights, claims, and causes of action used in the Business, including such claims against third parties relating to the Business (such as avoidance actions against vendors, suppliers, or customers) are Purchased Assets.

Defendants allege that under the Purchase Agreement "[c]auses of action generally will be transferred to the Defendants." Defs. Supp. Br. 6. But Defendants do not and cannot include a supporting citation for this statement. See id. Section 2.1 of the Purchase Agreement provides that the Defendants will acquire only the rights, claims, and causes of action used in the Business, including those against third parties relating to the Business, but excluding those related to the Excluded Assets. See Purchase Agreement §2.1. Any avoidance actions that are not against vendors, suppliers, or customers would be an Excluded Asset not transferred to Defendants – whether or not they were used in the Business. Importantly, though, the Recovery Lawsuits are not avoidance actions brought pursuant to any section of the Bankruptcy Code. Defendants' concern that "[t]he Debtors' retention of the right to bring suit against Marsh or Aon would frustrate [Defendants] ability to chose … whether to use Marsh or Aon as an existing vendor" is a red herring. Defs. Supp. Br. 7. The Debtors retained all rights, claims, or causes of action against third parties relating to the Excluded Assets. See Purchase Agreement §2.1(p). The carve-out for claims against vendors, suppliers, and customers applies only to avoidance actions brought pursuant to the Bankruptcy Code. If the parties had desired to transfer to

Defendants all claims against vendors, suppliers, and customers, they could easily have drafted clear language to that effect, as they did for avoidance actions.

**The "Collateral Facts" Support the Debtors' Motion for Summary Judgment**

Defendants ask the Court to "look at collateral facts to determine the meaning of 'in the business [sic.]." Defs. Supp. Br. 11. Assuming, <u>arguendo</u>, that this were appropriate, the Debtors have demonstrated above that the four "collateral provisions within the Purchase Agreement" that Defendants rely on do <u>not</u> "support a finding that the Recovery Lawsuits and Settlement Proceeds are 'in the business [sic.].'" <u>Id.</u> (listing "(i) the parenthetical '(other than Excluded Assets)' immediately following the phrase 'used in the Business'; examples of Excluded Assets, including the avoidance action carveouts; (iii) the clause providing for the transfer of 'tangible or intangible' assets; and (iv) the clause providing for the transfer of asstes 'vested or unvested, contingent or otherwise.'").

Under any common sense reading, the Recovery Lawsuits and the Settlement Proceeds cannot be found to be "used in the Business."

## **CONCLUSION**

For the foregoing reasons and the reasons contained in the Debtors' previous pleadings, the Debtors' Motion for Summary Judgment should be granted and Defendants' Motion for Summary Judgment should be denied.

Dated: New York, New York
November 21, 2005

Respectfully submitted,

/s/ Michael P. Kessler
Michael P. Kessler, Esq. (MK 7134)
Gary D. Ticoll, Esq. (GT 1001)
Garrett A. Fail, Esq. (GF 4322)
WEIL, GOTSHAL & MANGES LP
767 Fifth Avenue
New York, New York 10153-0019
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for the Debtors